RECEIVED
IN ALEXANDRIA, LA

FEB 2 5 2009

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| PETER ROY ALFRED,<br>            Plaintiff | CIVIL ACTION<br>No. 1:07-cv-1785 |
| VERSUS | |
| WINN CORRECTIONAL<br>      CENTER, et al.,<br>            Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION
=========================

Before the court is a civil rights complaint filed pursuant to

42 U.S.C. §1983, in forma pauperis ("IFP"), by pro se plaintiff,

Peter Roy Alfred ("Alfred"), on October 25, 2007 (Doc. Item 1).

The named defendants are Winn Correctional Center ("Winn"), Warden

Tim Wilkinson ("Warden Wilkinson"), Warden Angie Martin ("Warden

Martin"), Warden Tim Morgan ("Warden Morgan"), Laura Howard,

Alfonzo Pacheco, M.D. ("Pacheco"), Pat Thomas, Lesia Coleman, Mitzi

Gaskill and Corrections Corporation of America ("CCA"). Alfred

alleges violation of his constitutional rights under the Eighth

Amendment because defendants failed to provide proper medical care

for his sleep apnea. For relief, Alfred requests monetary damages

in the amount of one hundred million dollars ($100,000,000.00),

punitive damages and injunctive relief. Alfred is presently

confined in Winn.

Alfred filed a motion for summary judgment (Doc. Item 60) on

May 13, 2008 and several supplemental motions for summary judgment

thereafter (Doc. Items 65, 73, 88, 94, 96, 99, 100). Defendants, who filed their own motion for summary judgment on June 6, 2008 (Doc. Item 82, 85, 95), filed a response to plaintiff's motion for summary judgment (Doc. Item 83). Additionally, Alfred filed his own responses to the defendants' motion for summary judgment (Doc. Item 89, 93). These motions are currently before the court for report and recommendation.

Law and Analysis

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Paragraph (e) of Rule 56 also provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes

of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Although a party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact, a defendant moving for summary judgment may rest on the absence of evidence to support the plaintiff's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). Once this burden has been established, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

Respondeat Superior

Alfred seeks to hold CCA liable under 42 U.S.C. §1983 for the acts of its employees. However, just as a municipal corporation is not vicariously liable for the constitutional torts of its employees, a private corporation is not vicariously liable under

§1983 for its employees' deprivations of others' civil rights.[1]
Plaintiff's complaint is devoid of any allegations that an official
policy or custom of CCA was the "moving force" behind its
employees' alleged deprivation of Alfred's civil rights.
Accordingly, Alfred's claims against CCA should be dismissed.

Alfred also names Winn as a defendant. Federal Rule of Civil
Procedure 17(b) provides the "capacity to sue or be sued shall be
determined by the law of the state in which the district court is
held." Thus, Louisiana law governs whether Winn has the capacity
to be sued in this action.

Under Louisiana law, to possess such a capacity, an entity
must qualify as a "juridical person". This term is defined by the
Louisiana Civil Code as "...an entity to which the law attributes
personality, such as a corporation or partnership." La. Civ. Code
Ann. Art. 24. A review of the Louisiana Secretary of State's

---

[1]  Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461
(5th Cir. 2003), the Fifth Circuit extended municipal corporate
liability under §1983 to include private prison-management
corporations and their employees. The court said, "[w]e agree
with the Sixth Circuit and with those district courts that have
found that private prison management corporations and their
employees may be sued under §1983 by a prisoner who has suffered
a constitutional injury." Id. In reaching its holding, the
court concluded, "[c]learly, confinement of wrongdoers-though
sometimes delegated to private entities- is a fundamentally
governmental function." Id. The test to determine liability for
a private prison-management corporation under §1983 is more or
less identical to the test employed to determine municipal or
local government liability. See, Phillips v. Corrections Corp.
of America, No. 02-766, 2006 WL 1308142 at *3 (W.D. La. May 10,
2006); see also, Monell v. Dept. of Social Services, 436 U.S.
658, 694, 98 S.Ct. 2018, 237, 56 L.Ed.2d 611 (1978).

corporation database suggests that Winn is not a corporation, and, as such, not a juridical person. Plaintiff has failed to allege or establish otherwise; therefore, Winn should be dismissed as a defendant.

Wardens Tim Wilkinson, Angie Martin and Tim Morgan are also named as defendants in the instant lawsuit. In his complaint, Alfred states he wrote Warden Wilkinson advising of his denial of medical treatment. He then states that the Wardens failed to take any action in response to his complaints. Additionally, he alleges that the Wardens negligently supervised the medical needs and treatment of Winn inmates and they "are totally in violation of plaintiffs [sic] civil rights. 8th Amendment."

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be vicariously liable for their subordinates actions. Supervisory officials may be held liable only if (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. denied, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); Tompkins, 828 F.2d at 303.

Alfred fails to allege any facts that establish any of the three Wardens were personally involved in prescribing, authorizing or denying a CPAP machine. As Alfred has not offered any proof of any acts or omissions or any unconstitutional policies implemented by Wardens Wilkinson, Martin or Morgan which deprived him of his constitutional rights, all claims against Wardens Wilkinson, Martin and Morgan should be dismissed.

Deliberate Indifference to Medical Needs

Alfred asserts claims against the remaining defendants, Howard, Pacheco, Thomas, Coleman and Gaskill, for failure to provide treatment for his sleep apnea disorder. Specifically, failure to provide a CPAP machine. Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of harm. Farmer. v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994).

Alfred bears the burden of proving his claim for medical mistreatment under the Eighth Amendment, and he must prove the defendants' deliberate indifference by showing they "refused to treat him, ignored his complaints, intentionally treated him

6

incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Tex. Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The parties agree that Alfred suffers from sleep apnea and that this diagnosis was known to those at Winn from the date he arrived. It is also undisputed that Alfred requested the use of a CPAP machine on numerous occasions. Where the parties disagree is with respect to whether Alfred's sleep apnea disorder constituted a serious medical need and, if so, whether the defendants intentionally disregarded that serious medical need.

According to the National Library of Medicine:

Sleep apnea is a common disorder that can be serious. In sleep apnea, your breathing stops or gets very shallow. Each pause in breathing typically lasts 10 to 20 second or more. These pauses can occur 20 to 30 times or more in an hour.

The most common type is obstructive sleep apnea. That means you are unable to get enough air through your mouth and nose into your lungs. When that happens, the amount of oxygen in your blood may drop. Normal breaths resume with a snort or choking sound. People with sleep apnea often snore loudly. However, not everyone who snores has sleep apnea.

When your sleep is interrupted throughout the night, you can be drowsy during the day. People with sleep apnea are at risk for car crashes, work-related accident and other medial problems. If you have it, it is important to get treatment.

National Library of Medicine, available at: http://www.nlm.nih. gov/medlineplus/sleepapnea.html.

7

Additionally, according to the American Sleep Apnea Assocaition, treatment options for obstructive sleep apnea include: positional therapy (avoiding lying down), weight loss, avoiding alcohol or other central nervous system depressants, oral appliances, surgery and Continuous Positive Airway Pressure (CPAP). American Sleep Apnea Association, available at: http://www.sleep apnea.org/resources/pubs/treatment.html.

A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Hill v. DeKalb Regional Youth Detention Ctr., 40 F.3d 1176, 1186-87 (5th Cir. 1994), abrogated on other grounds, Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). According to a report by Andrew L. Chesson, Jr., M.D., director of the Louisiana State University Health Sciences Center Sleep Disorder Clinic, Alfred's December 2003 sleep study revealed he suffered from sleep apnea. Therefore, Dr. Chesson recommended that Alfred use a CPAP machine. Despite this recommendation, there is no indication that a CPAP machine was actually prescribed by Dr. Chesson or obtained by Alfred. Even if it was, the records provided by Richwood and Forcht Wade detention centers reveal that Alfred had not been using a CPAP machine. Furthermore, those medical records failed to indicate a determination by a prison doctor or prison medical staff member that Alfred's sleep apnea

disorder was severe in nature. Based on these medical records and his own physical examination, Dr. Pacheco's medical opinion was that Alfred's sleep apnea was not critical and did not require the use of a CPAP machine. Rather, it could be controlled by conservative treatments such as weight loss.

Even if it was a serious medical need, the defendants did not deliberately disregard his sleep apnea. The summary judgment evidence, including Alfred's medical records and affidavits of Dr. Pacheco and Thomas, reveals that Alfred frequently appeared at sick call and on many of those occasions complained about his sleep apnea and/or requested a CPAP machine. In some of those instances, Alfred was seen due to elevated blood pressure. His vital signs were checked, he was provided with his prescribed medicine for high blood pressure and released. In other instances, Alfred presented with chest pains. Again, his vital signs were checked and an appropriate course of action was taken with respect to those findings. Further, when Alfred made written requests for his CPAP machine, defendants Howard, Coleman and Gaskill noted that his request had been answered by Dr. Pacheco. These statements do not suggest deliberate indifference by defendants Howard Coleman and Gaskill as they were not authorized to prescribe a CPAP machine and were following orders of the prison physician.

Though Alfred relies heavily on his argument that outside

physicians issued prescriptions for a CPAP machine[2], the evidence shows that at the same time an initial prescription was issued, Dr. Pacheco began re-evaluating Alfred's sleep apnea condition and whether a CPAP machine should be provided. Dr. Pacheco and Thomas discussed Alfred's treatment with Dr. Singh, the director of inmate care for the Department of Corrections, and ultimately decided a sleep study should be conducted to determine Alfred's need for the CPAP machine. While they initially agreed a CPAP machine would not be issued unless and until the results of the sleep study dictated such, Dr. Pacheco went ahead and provided a CPAP machine prior to the sleep study taking place.

In Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999), the Fifth Circuit found that the failure of a prison doctor to follow the recommendations of an outside treating physician did not present a material fact issue for deliberate indifference. Rather, it indicated that the doctors had a differing opinions as to the appropriate method of treatment under the circumstances. Therefore, Dr. Pacheco was under no obligation to follow the recommendations of the non-prison physicians. Furthermore, though the course of treatment or the time frame in which it was provided was not always to Alfred's liking, this was of no consequence. A delay in receiving medical care does not in and of itself

---

[2]   One prescription dated January 14, 2008 was issued by a doctor at Huey P. Long Medical Center and the other by Arthur T. Fort, III, M.D. on May 1, 2008.

constitute an Eighth Amendment violation. Though Alfred may have disagreed with timing of and manner in which treatment was provided, it does not amount to a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 193; Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1979).

Accordingly, Alfred has not shown that any of the defendants' conduct amounted to deliberate indifference and, as there are no genuine issues of material fact, summary judgement should be granted in favor of defendants.

Retaliation

In his complaint, Alfred makes a general allegation that the defendants began to retaliate against him because he filed the instant lawsuit. Alfred reiterates this claim in three motions: a motion to restore 180 days of good time (Doc. Item 71), a motion for supplemental restraining order (Doc. Item 87) and a motion for protective order (Doc. Item 101). Specifically, he claims the defendants ordered people in the law library to refuse him help, "Warden Wilkinson threw [him] in the cell blocks", he was the target of a tier wide shakedown and his witnesses were being retaliated against as well.

Retaliation for the exercise of a constitutional right is actionable, even if the act, when taken for different reasons, would have been proper. Woods v. Smith, 60 F.3d 1161, 1165(5th

Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

The law is well established that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts. Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986), cert. den., 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986), citing Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir.), modified on other grounds, 688 F.2d 266 (5th Cir. 1982), cert. den., 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). Prison officials are prohibited from retaliating against inmates who complain of prison conditions or official misconduct. A guard thus may not harass an inmate in retaliation for the inmate complaining to supervisors about the guard's conduct. Gibbs, 779 F.2d at 1046; Ruiz, 679 F.2d at 1154. Also, Woods, 116 S.Ct. at 1165.

To state a retaliation claim, a claimant must allege both that the type of activity that he engaged in was protected under the constitution and that the state impermissibly infringed on his right to engage in the protected activity. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985), citing Owens v. Rush, 654 F.2d 1370 (10th Cir. 1981). The inmate must be prepared to establish that but for the retaliatory motive the complained of incident, such as a filing of disciplinary reports, would not have occurred. Mere conclusory allegations of retaliation will not withstand a summary

judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. Woods, 60 F.3d at 1166.

Even when taking the allegations asserted in the complaint and motions together, Alfred fails to establish a claim for retaliation. He offers nothing in the way of either evidence of motivation or a chronology of events from which one can infer retaliation. The conduct about which Alfred complains amounts to nothing more every day prison occurrences which he attempts to tie to a claim for retaliation with conclusory allegations. Accordingly, Alfred's retaliation claims should be dismissed.

Negligence, Medical Malpractice and Verbal Abuse

In addition to the foregoing claims, Alfred asserts claims for negligence, medical malpractice and verbal abuse in the form of racial epithets. These claims are not actionable under §1983 and therefore should be dismissed. See, Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991), citing Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1979); Calhoun v. Hargrove, 312 F.3d 730 (5th Cir. 2002), citing Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED as there is no genuine issue of material fact in dispute.

IT IS FURTHER RECOMMENDED that Alfred's motions for summary judgment should be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from the service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections with **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON THE GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this _____ day of February, 2009.